WENTZEL *v.* HUTCHISON.

1. STIPULATIONS—PRETRIAL CONFERENCE.

An agreement or stipulation between the parties that is made at the pretrial conference is binding upon the trial court, unless it is modified at or before trial, or to prevent an injustice.

2. APPEAL AND ERROR—ACCOUNTING—DE NOVO HEARING.

The Supreme Court hears an accounting suit *de novo,* since it is a chancery proceeding.

3. ACCOUNTING—HOTEL MANAGERS.

Decree for defendant hotel owners is ordered entered in suit against them by plaintiffs who had undertaken to manage and operate the business under an oral contract whereby plaintiffs were to receive 60% of the net profits, where trial court found neither party entitled to items for depreciation, that meals chargeable to expense of operation did not include meals for plaintiffs' son, and correct computation pursuant to trial court's findings shows a small overpayment to plaintiffs.

Appeal from Marquette; Rushton (Carroll C.) J. Submitted April 4, 1963. (Calendar No. 26, Docket No. 49,437.) Decided June 6, 1963.

Assumpsit by Adrian Wentzel and Beatrice Wentzel against Ira B. Hutchison and Margaret Hutchison for sums due on contract to manage resort lodge. Case heard as an accounting. Defendant Margaret Hutchison dismissed as party defendant. Decree

REFERENCES FOR POINTS IN HEADNOTES

[1] 50 Am Jur, Stipulations § 9.
[2] 1 Am Jur 2d, Accounts and Accounting § 64.
[3] 1 Am Jur 2d, Accounts and Accounting § 63.

for plaintiffs.   Defendant Ira B. Hutchison appeals.
Reversed and remanded.

*DeFant & Bridges (Michael F. DeFant,* of counsel), for plaintiffs.

*Baldwin & Kendricks,* for defendant.

KAVANAGH, J.   Plaintiffs instituted a law action to recover sums allegedly due them under the terms of an oral contract with defendants Ira B. Hutchison and Margaret Hutchison, husband and wife.

On motion of defendants the case was transferred to the chancery side of the court for accounting to determine if plaintiffs were entitled to the amounts sought.   Margaret Hutchison was dismissed as a party defendant.

In February of 1956 defendant and his wife purchased the Big Bay Lodge, a hotel located at Big Bay, Michigan.   In March of that year the defendant and his wife entered into an oral agreement with plaintiffs, whereby plaintiffs were to manage and operate the business in consideration of a 60% share in the net profits.   Plaintiffs commenced managing the business in April, 1956, and continued until May 8, 1959.

At the pretrial conference the parties agreed to certain items on the balance sheet covering the period of plaintiffs' employment.   Four items were disputed and became the framed issues at trial. They were as follows:

(1) $3,861 under income.   Defendant claims plaintiffs should be charged for the cost of their meals while living at the hotel.   Plaintiffs alleged it was part of the agreement that their meals were to be furnished free.

(2) $4,626.66 under costs and expenses.   Defendant claimed he paid this amount as operating ex-

penses. Plaintiffs alleged this figure represented capital expenditures.

(3) $10,867.71 under costs and expenses. Defendant claimed the parties had agreed to take into account depreciation of equipment and supplies in determining net profit. Plaintiffs denied this element was part of the contract.

(4) $1,150 under costs and expenses. Plaintiffs requested this amount as depreciation on their truck and washing machine.

Under defendant's theory, considering these 4 items, a net loss of $3,361.79 resulted. Under plaintiffs' theory, the operation resulted in a net profit in excess of $7,000.

The trial court concluded as follows:

"It is the finding of the court, with respect to the accounting between the parties; that neither party is entitled to the several amounts claimed by way of depreciation; namely, the claim of the defendants that they are entitled to a depreciation item of $10,867.71 and the claim of the plaintiffs that they are entitled to depreciation in the amount of $1,150; that the total of these 2 items amounts to $12,017.71 and the difference between income and expenses is thereby increased to that amount, subject to deduction of claim lost by the defendants, in the amount of $3,361.79.

"It is the further finding of the court, that for the purposes of arriving at an accounting, it does accept the claimed loss of the defendants, however it does not believe that this figure truly represents the loss in the operation of the hotel after 3 years of operation; that after deduction of claimed net loss there remains a net income of $8,655.92 and under the 60–40 arrangement between the parties, the plaintiffs should have received, and are entitled to, $5,193.55, however, the plaintiffs have already received, in cash drawings, the amount of $2,396, and it is the further finding of the court that they should

be charged 1/3 of the meals received by the plaintiffs and their son, which would amount to $1,287.

"It is the finding of the court therefore, that against the net income of $5,193.55, to which the plaintiffs were entitled, they already received the sum of $3,861, and they are entitled to a further return of $1,510.55."

On appeal, defendant raises 2 questions:

(1) Did the court err in finding a net profit?

(2) Did the court err in disallowing defendant's and plaintiffs' claimed depreciation in computing net profits?

The pretrial agreement and stipulation binds the court, unless modified at or before trial, or to prevent an injustice. The trial court in following the stipulation erred in arriving at the net profit owed plaintiffs by failing to recognize that in allowing only 1/3 of the cost of the meals, the income statement of plaintiffs should have been reduced by $2,574, which would result in a reduction of net profit. The proper computation of the findings of the lower court would result as follows:

1. The adjusted gross income figure upon the elimination of 2/3 of the cost of the meals is $39,415.19.

2. The expense statement after removing the depreciation items is $33,333.27;

3. The difference, then, between income and expense is a net income of $6,081.92;

4. Under the 60–40 agreement, plaintiffs would be entitled to 60% of $6,081.92 or $3,649.15;

5. In subtracting the plaintiffs' cash drawings of $2,396 and 1/3 of the cost of plaintiffs' meals of $1,287—a total of $3,683—from plaintiffs' share of the profits, an overpayment of $33.85 results.

This Court, in a chancery accounting suit, hears the matter *de novo. Crooker* v. *Crooker,* 340 Mich 250. We have so examined the record. We have

correctly reduced the finding of the lower court as to the net profit, which necessitates the entry of a decree in favor of defendant of no cause for action.

It is not necessary to review the other questions discussed in the briefs of appellant and appellees, since we conclude that a correct computation of the net profit results in an overpayment to plaintiff. If we were to change the ruling of the lower court as to the depreciation matters, we would find an increase of this overpayment. The case was not tried on the theory of fair compensation for the labor of plaintiffs. The pretrial stipulation and order precluded such a theory.

The decree of the lower court is reversed and the case is remanded to the trial court for entry of a decree in favor of defendant of no cause for action. Defendant shall have costs.

Carr, C. J., and Kelly, Black, Souris, Smith, and O'Hara, JJ., concurred.

Dethmers, J., took no part in the decision of this case.